**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| JEANNIE SANCHEZ,        ) | |
|        ) | |
|     Plaintiff,     ) | |
|        ) | |
|    v.       ) | CAUSE NO. 1:23-cv-663 |
|        ) | |
| REPUBLIC SERVICES, INC. and    ) | |
| REPUBLIC SERVICES OF INDIANA,    ) | |
| Limited Partnership,    ) | |
|        ) | |
|     Defendants.    ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Comes now the Plaintiff, Jeannie Sanchez ("Plaintiff" or "Sanchez"), by undersigned counsel, and hereby files this lawsuit against Defendants Republic Services, Inc. and Republic Services of Indiana, Limited Partnership (collectively "Defendants") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Indiana Common Law for the torts of intentional infliction of emotional distress and negligent retention.

### PARTIES

1.     Plaintiff has resided within the Southern District of Indiana at all relevant times.

2.     Republic Services, Inc. and Republic Services of Indiana, Limited Partnership are both corporations that operate and conduct business in the Southern District of Indiana.

1

3.      Plaintiff was employed by Republic Services, Inc. at its Indiana location, which is operated by its Indiana subsidiary, Republic Services of Indiana, Limited Partnership.

## JURISDICTION AND VENUE

4.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 42 U.S.C. § 2000e-5(f)(3).

5.      Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

6.      Defendants are both an "employer" within the meaning of 42 U.S.C. § 2000e(b).

7.      Plaintiff satisfied her obligation to exhaust her administrative remedies, having timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission.  Plaintiff received her "Dismissal and Notice of Rights" on said Charge and now timely files this lawsuit within ninety (90) days after receipt of said Notice.

8.      All of the events, transactions and occurrences pertinent to this lawsuit occurred within the geographical environs of the Southern District of Indiana and all parties are located therein.  Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

9.      Sanchez is female, placing her in a protected class under Title VII.

10.      Defendants hired Sanchez in 2016 as a Call Center Representative.

11.      At all times during her employment, Sanchez met or exceeded Defendants' legitimate performance expectations.

12.     On March 26, 2021, Sanchez was promoted to an Account Executive position with Defendants.

13.     Sanchez's direct supervisor in the Account Executive position was Sales Supervisor Darius Evans ("Evans").

14.     Throughout her employment with Defendants, Plaintiff was subjected to unlawful harassment on the basis of her sex.  Evans began sexually harassing Sanchez soon after she started her new position. The harassment was both severe and pervasive. The harassment was both objectively and subjectively offensive to Sanchez.  By way of example, but not limitation, of this harassment, Sanchez provides the following:

15.     Evans once told a story about a woman who hit on him at a grocery store, and then asked Sanchez if she was "freaky." Sanchez responded that she had been married for 31 years.

16.     On another occasion, Evans asked Sanchez "if the carpet matched the drapes," a lewd reference to the color of her pubic hair.

17.     While riding in a car for a work assignment, Evans inappropriately began rubbing Sanchez's leg.

18.     In early May 2021, Evans contacted Republic Services, Inc.'s corporate office to get Sanchez's home address, then mailed an unsigned Mother's Day card to her.

19.     Once, Sanchez told Evans that she had gotten wet while working in the rain, and Evans told her "I could take that soooo many ways."

20.     On one occasion, during a trip to the Transfer Station in Greenwood, Indiana, Evans told Sanchez that she was "sassy" and launched into a lewd and misogynistic fantasy about rough sex, saying if Sanchez's husband could not "handle" her, he would send his wife to Michigan for a while, but he could not "guarantee [Sanchez] would be able to walk for a week."

21.     Evans also openly fantasized about Sanchez's daughter. When he first asked about her daughter, Sanchez responded that she had five. Evans said "not the oldest, because she's married, but how about the next one? I can use a young girl like that."

22.     On at least two occasions, the first of which occurred approximately one week into her Account Executive position in March 2021, Evans pressured Sanchez to drink alcohol at a business lunch, which is in violation of Defendants' company policy. When Sanchez refused, Evans suggested that her job may be in jeopardy, saying that she "had the job" of the last person who refused to drink with him.

23.     In or about May or June 2021, Evans challenged Sanchez to a bet. When she suggested a $50 wager, Evans declined, saying he wanted something more "risqué."

24.     Evans displayed several behaviors specifically prohibited under Defendants' policies, including inappropriate physical touching, sexually explicit language, sexual jokes, comments about other employees' bodies, and expressions of attraction or sexual interest.

25.     As she was obligated to do under Defendants' sexual harassment policy, Sanchez reported Evans's harassing behavior.

4

26.     After the business lunch in March when Sanchez refused to drink with Evans, Sanchez first called two experienced Account Executives she had previously worked with when she was a Lead Generator, Brooke Morgan and Robin McBurnett, to ask for advice. They advised her to not drink with Evans, to keep her distance, and they would help.

27.     Following the comments about her daughter, Sanchez contacted Scott Hicks ("Hicks"), Republic Services, Inc.'s Director of the Indianapolis Customer Relations Center ("CRC") and messaged Jim Hughes ("Hughes"), Republic Services, Inc.'s Human Resources Representative for the CRC, on or around April 19, 2021, and explained what had occurred with Evans over the few weeks she had been under his supervision. This complaint constitutes protected activity

28.     Neither Hughes nor Hicks took any action, but told her to call Republic Services, Inc.'s confidential, toll-free AWARE hotline if it happened again.

29.     Sanchez became so uncomfortable around Evans that she would call a friend, Sandy Green or Pam Broxton, when she was in the car with Evans so someone would know where she was.

30.     Another Manager employed by Republic Services, Inc., Teresa Hoppe ("Hoppe"), reached out to Sanchez after speaking with Broxton on or about May 13, 2021. Sanchez expressed her concerns with Evans's behavior and Hoppe relayed that information to Morgan Gray ("Gray"), Republic Services, Inc.'s Senior Manager at the Indianapolis CRC. Sanchez's report to Hoppe constitutes protected activity.

31.     Shortly thereafter, Gray contacted Sanchez about her complaints and put her in touch with Republic Services, Inc.'s Director of Inside Sales, Scott Dresser ("Dresser"), to discuss the ongoing harassment. Sanchez spoke with Dresser on or about May 13, 2021. This complaint constitutes protected activity.

32.     In a text message, Dresser told Sanchez that he had never worked for a company that fostered sexual harassment as much as Republic Services, Inc. did.

33.     Dresser told Sanchez to call Republic Services, Inc.'s 800-number hotline or contact Human Resources. Sanchez complained to Republic Services, Inc. Human Resource Manager Andy De La Cruz ("De La Cruz") about the harassment on or about May 14, 2021. Sanchez's complaint to De La Cruz constitutes protected activity.

34.     After Sanchez reported to De La Cruz, he told her that he was going to inform Evans about her complaints.

35.     Sanchez next complained about Evans' treatment of her in an email to Jon Vander Ark, Republic Services, Inc.'s then-Chief Operating Officer (and now President and CEO), on June 17, 2021, after he sent an e-mail about the company's non-retaliation policy.

36.     Sanchez complained that her boss (Evans) was retaliating against her and that he made very sexual comments to her from the first week in her new position; ordered alcohol for the team at lunch on the company dollar and then told Sanchez "you know what happened to the last guy who didn't drink with us – you have his position"; that she had called Republic Services, Inc.'s awareness line, but that Evans was still her supervisor, knew she had reported him, and now she had "a target on [her]

6

back"; and that she believed as a result of her complaints she was having sales opportunities taken from her. This complaint constitutes protected activity.

37.     Sanchez was contacted later that morning by Jennifer Thomson, Republic Services, Inc.'s Vice President, Associate General Counsel for Employment, Ethics and Compliance. Thompson told Sanchez she was going to assign an individual to investigate her concerns.

38.     Sanchez asked on July 6, 2021 if she could speak with Thomson directly and Thomson initiated an investigation in July 2021. Sanchez's complaint to Thomson constitutes protected activity.

39.     Thomson conducted a perfunctory investigation and ultimately concluded she could not substantiate the claims because Evans had denied them.

40.     Following Sanchez's complaints and Defendants' disclosure of those complaints to Evans, Evans began to retaliate against Sanchez, including, but not limited to, placing extra scrutiny on her expense reports and taking sales opportunities away from her.

41.     By way of example and not limitation, in August 2021, Sanchez's team planned an "AE Blitz" wherein Account Executives would go to other Account Executives' territories to cold call businesses together, with the goal of generating more leads and sales for each Account Executive.

42.     The "AE Blitz" was scheduled for August 3-5, 2021. Evans and Sanchez participated in the "Blitz" for two other Account Executives in their sales areas on August 3 and 4; however, on the morning of August 5, Evans canceled Sanchez's "Blitz"

even though Sanchez and two other Account Executives were present and waiting for Evans to arrive.

43.     Evans also said he would never hire anyone again from the CRC because they "bitch too much and ask too many questions." Sanchez was the only employee in Evans's line of supervision that came from the CRC.

44.     As part of her training, Sanchez was required to participate in Defendants' company-wide training regime. As part of that training, she was required to take and pass Republic Services, Inc.'s Priority Based Selling (PBS) test.

45.     Evans was required to train his direct reports in preparation for their PBS exams, but began canceling PBS training sessions with Sanchez not long after she started in her position in March and began rebuffing his advances.

46.     After meeting with the company's investigator in July, Evans continued to cancel all of Sanchez's trainings, as well as one-on-one meetings.

47.     Sanchez took the PBS exam for the first time in August 2021. At the time, she was sick and coughing while talking, and the video feed failed due to no fault of her own.

48.     Evans told Sanchez not to worry, that the exam would not count against her. Sanchez learned soon after that she had not passed the test.

49.     Despite this, Evans sent out a group email saying everyone had passed the PBS test and canceled all training sessions, including Sanchez's.

50.     Confused by this contradictory messaging, Sanchez reached out to Brenna Sanchez ("Brenna"), Republic Services, Inc.'s Senior Manager for Sales Effectiveness, who oversaw the PBS test, to discover whether she passed or failed.

51.     Brenna confirmed that Sanchez had failed but also told Sanchez that she should continue to receive training to practice for her next attempt. Sanchez explained to Brenna that Evans refused to meet with Sanchez to help her prepare for the first attempt and had canceled many training sessions with her.

52.     Sanchez prepared for the next PBS exam with Brenna.

53.     Before she could attempt the test again, Evans placed Sanchez on a Performance Improvement Plan ("PIP") on September 9, 2021, and required her to have weekly meetings with him to "practice the PBS fundamentals, review weekly progress of sales proposal goals; review weekly progress of sales call goals, and review weekly new business goals." However, Evans continued to cancel meetings with Sanchez.

54.     On September 9, 2021, Sanchez e-mailed Thomson and complained that she was being retaliated against by Evans for her earlier complaints. This complaint constitutes protected conduct.

55.     Around this time, Sanchez requested that she be transferred back to the CRC to get away from Evans. However, Defendants refused to allow her to transfer.

56.     Sanchez's next attempt at PBS certification came on September 29, 2021, and she was informed that she did not pass the test.

57.     Brenna reached out to one of the evaluators and the faux customer used in the exam, and both believed that Sanchez had passed based on their observation.

Brenna then viewed the video of the exam with another coworker in Arizona, and both thought she should have passed this attempt and had praise for Sanchez.

58.    Brenna then made it clear to Evans that Defendants' expectation is that new Account Executives are to be given three opportunities to pass PBS in a 90-day period.

59.    On October 1, 2021, Brenna e-mailed Evans with instructions to schedule the third attempt approximately 30 days out, that she would grade the test, that Evans should schedule "multiple opportunities a week to practice and role play," and that Sanchez should be given "the opportunity to practice the PBS process from start to finish with constructive coaching after each session."

60.    Brenna added that the role plays could be conducted with "supervisors, area leaders, and other PBS all-stars from your area." Evans responded to this email by saying "Thank you for the recap. I will get these [trainings] scheduled."

61.    Instead, Evans fired Sanchez on October 4, 2021, without giving her the opportunity to prepare for or take the PBS certification a third time.

62.    Sanchez never received any information about the company's second investigation into her complaints of retaliation.

63.    Defendants' reasons for terminating Sanchez are pretextual.

64.    Sanchez has suffered and continues to suffer injury as a result of Defendants' unlawful actions.

## COUNT I

## TITLE VII – SEX DISCRIMINATION

65.     Plaintiff hereby incorporates paragraphs 1 – 64 of her Complaint.

66.     Defendants took adverse employment actions against Plaintiff because of her sex.

67.     Other, similarly-situated individuals who are not female have been treated more favorably by Defendants and have not been subject to the same adverse employment actions as Plaintiff.

68.     Defendants' unlawful actions were intentional, willful, and done in reckless disregard of Plaintiff's rights as protected by Title VII.

## COUNT II

## TITLE VII – SEX HARASSMENT

69.     Plaintiff hereby incorporates paragraphs 1 – 68 of her Complaint.

70.     Plaintiff was subjected to harassment by her supervisor.

71.     Defendants created a hostile work environment for Plaintiff because of her sex.

72.     Plaintiff complained about the hostile environment to Defendants, but Defendants took no action designed to remedy the hostile work environment.

73.     Defendants terminated Plaintiff.

74.     Defendants' unlawful actions were intentional, willful, and done in reckless disregard of Plaintiff's rights as protected by Title VII.

## COUNT III

## TITLE VII – RETALIATION

75.     Plaintiff hereby incorporates paragraphs 1 – 74 of her Complaint.

76.     Plaintiff engaged in statutorily-protected activities before her termination.

77.     Defendants took adverse employment actions against Plaintiff in

retaliation for her engagement in these statutorily-protected activities.

78.     Defendants' unlawful actions were intentional, willful, and done in

reckless disregard for Plaintiff's rights as protected by Title VII.

## COUNT IV

## INDIANA COMMON LAW – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

79.     Plaintiff hereby incorporates paragraphs 1 – 78 of her Complaint.

80.     Defendants, through their employee Darius Evans, engaged in extreme

and outrageous conduct towards Plaintiff.

81.     Defendant's conduct, by and through its employee Darius Evans,

intentionally or recklessly caused severe emotional damage to Plaintiff.

82.     Plaintiff suffered harm as a result of Defendant's conduct.

## COUNT V

## INDIANA COMMON LAW – NEGLIGENT RETENTION AND SUPERVISION

83.     Plaintiff hereby incorporates paragraphs 1 – 82 of her Complaint.

84.     Defendants knew, or had reason to know, that its employee, Evans, was harassing, discriminating and/or retaliating against Plaintiff while she was under his supervision.

85.     Defendants failed to exercise reasonable care to protect Plaintiff from Evans.

86.     Defendants were negligent in continuing to employ Evans despite their knowledge of his unlawful behavior.

87.     Plaintiff suffered and continues to suffer harm as a direct and proximate result of Defendants' negligence.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff, Jeannie Sanchez, respectfully requests that this Court find for her and order that:

1.     Defendants reinstate Plaintiff to the same position, salary, and seniority, or pay front pay and benefits to her in lieu thereof;

2.     Defendants pay lost wages and benefits to Plaintiff;

3.     Defendants pay compensatory and punitive damages to Plaintiff;

4.     Defendants pay pre- and post-judgment interest to Plaintiff;

5.     Defendants pay Plaintiff's attorneys' fees and costs incurred in litigating this action; and

6.     Defendants pay to Plaintiff any and all other legal and/or equitable damages that this Court determines just and proper to grant.

Respectfully submitted,

*s/ Jason P. Cleveland*
Jason P. Cleveland (24126-53)
Eric J. Hartz (29676-49)
CLEVELAND LEHNER CASSIDY
6214 Carrollton Ave., Ste. 200
Indianapolis, IN 46220
Tel: 317-388-5424
Fax: 317-947-1863
Email: jason@clcattorneys.com
        eric@clcattorneys.com

Counsel for Plaintiff, Jeannie Sanchez

## DEMAND FOR JURY TRIAL

Plaintiff, Jeannie Sanchez, respectfully requests a jury trial for all issues deemed triable.

Respectfully submitted,

*/s/ Jason P. Cleveland*
Jason P. Cleveland, Attorney #24126-53

14